IN THE UNITED STATES BANKRUPTCY COURT
FOR SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  
NATCHEZ REGIONAL MEDICAL CENTER

CHAPTER 9  
CASE NO. 14-01048-NPO

## AMENDED MOTION FOR EXTENSION OF FINAL ORDER FOR (I) OBTAINING CREDIT, (II) MODIFYING AUTOMATIC STAY, AND (III) GRANTING POST-PETITION LIENS THROUGH AND INCLUDING DECEMBER 31, 2014

**COMES NOW,** Natchez Regional Medical Center ("**NRMC**") and files this its Amended Motion for an Extension of Final Order for (I) Obtaining Credit, (ii) Modifying Automatic Stay, and (iii) Granting Post-Petition Liens through and including December 31, 2014 (the "**Motion**"), and in support thereof would show unto the Court the following:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157, 364, 362, 901, 928, Rule 4001 of the Federal Rules of Bankruptcy Procedure and other related code sections and rules.

2. This matter is a core proceeding.

3. On March 26, 2014 (the "**Petition Date**"), NRMC filed with this Court its Voluntary Petition (the "**Petition**") for relief under Chapter 9 of Title 11, United States Code (the "**Bankruptcy Code**"). NRMC is in possession of its assets and properties.

4. NRMC is a 179 bed hospital located in Natchez, Mississippi and owned by Adams County, Mississippi (the "**County**"). It is NRMC's intent to sell the hospital pursuant to Section 41-13-15 of Mississippi Code of 1972, as amended from time to time, and pay all of its creditors in full.

5. An Order was entered by this Court on April 25, 2014 [Dkt. No. 137] approving

1

the Amended Motion for Order (I) Obtaining Credit, (II) Modifying Stay, and (III) Granting Post-Petition Liens through July 15, 2014.

## Statement of Relief Requested

6. NRMC is requesting authority to extend the terms and conditions of the Line of Credit (the "**LOC**") and the existing loan documents with United Mississippi Bank ("**UMB**") through December 31, 2014 to pay necessary operating expenses to protect the assets of the estate in order to complete a sale of the hospital. The funds are to be used by NRMC according to the attached 26 week cash flow (**Exhibit "A"**). In the event NRMC uses collateral of UMB or borrows post-petition funds, on the existing LOC, then UMB is to be granted a post-petition continuing lien on its pre-petition collateral, including NRMC's cash and accounts receivables, DSH and UPL installment payments.

7. NRMC is obligated to UMB, on a Revolving Loan Note, originally dated August 5, 2008, renewed most recently on August 2, 2012 and supported by draw notes renewed on December 12, 2013 in the amount of $3,000,000.00 and a draw note renewed on January 17, 2014 in the amount of $875,000.00 for a total principal amount of $3,875,000.00 ("**UMB Note**"). By agreement, the December 12, 2013 $3,000,000.00 draw note is currently limited to $1,500,000.00. UMB was granted a lien pursuant to a Commercial Security Agreement dated August 5, 2008 ("**UMB Security Agreement**") renewed on August 2, 2012 and Assignments of Deposit Accounts renewed on the same date and August 8, 2012 and perfected by the filing of a UCC-1 Financing Statement, dated August 8, 2008, with the Mississippi Secretary of State's Office (File No. 2008016780A) as amended by the filing of a UCC-3 Financing Statement, dated February 19, 2013 (File No. 20130951703B)(collectively, the "**Financing Statements**"). The

principal, interest, costs, expenses, and other amounts owing under the UMB Note are referred to herein collectively as the "**Pre-Petition Indebtedness**".

8. Computed as of June 10, 2014 NRMC admits and stipulates that it is indebted to UMB in the aggregate amount of approximately $260,163.11 comprised of: unpaid principal and interest accrued Post-Petition. NRMC believes that, as security for repayment of the indebtedness, UMB holds valid, perfected, and enforceable liens and security interests in the NRMC's accounts, deposits, accounts receivables, including DSH and UPL installment payments, as described in the UMB Security Agreement and the Financing Statements. NRMC believes that UMB's liens and security interests include, among other things, first priority liens and security interests in NRMC's Accounts including Health Care Insurance Receivables, DSH and UPL installment payments.

**UMB Documents and Provisions:**

a) Extension of existing Loan Documents (listed below) through December 31, 2014 and reinstitution of Sweep Agreement to pay down the LOC in accordance with NRMC's past practice and the Loan Documents in accordance with the terms of the letter agreement dated March 21, 2014 which are incorporated in pertinent part herein (the "**UMB Terms**")(which terms control over any summary of said terms in this motion) except where modified herein. All electronic payments will be deposited into the existing bank accounts.

The Loan Documents are as follows:

    i) Base Promissory Note dated August 2, 2012 (renewal of Revolving Loan Note dated August 5, 2008) supported by a draw note dated December 12, 2013, with the original principal limit of $3,000,000.00 and a draw note in the amount of $875,000.00 dated January 17, 2014. **Exhibit "B"**;[1]

---

[1] Exhibits B-K were attached to the Motion for Approval [Dkt. No. 69] and the Amended Motion [Dkt. Nos. 112 and 122] and are deemed incorporated.

    ii)  Renewal Business Loan Agreement, Commercial Security Agreement, Assignment of Deposit Account dated August 2, 2012 and Assignment of Deposits Account dated August 5, 2008. **Exhibit "C"**;

    iii)  Lockbox and Account Control Agreement dated August 5, 2008. **Exhibit "D"**;

    iv)  UCC-1 Financial Statement dated August 5, 2008 - **Exhibit "E"** and UCC-1 Financing Statement Amendment filed February 19, 2013.

    v)  Borrowing Base Certificate;*

    vi)  Line of Credit Sweep Agreement;*

    vii)  $875,000 Irrevocable Standby Letter of Credit No. 3(2008), dated August 5, 2008 (the "**Standby Letter of Credit**");[2] and

    viii)  Standby Letter of Credit Reimbursement Agreement

  * These United Mississippi Bank loan documents are voluminous and therefore are not attached in full. A complete set of loan documents may be requested from counsel for United Mississippi Bank by directing such request to Kristina M. Johnson, Esq. P.O. Box 427, Jackson, Mississippi 39205-0427, 601-949-4785, kjohnson@joneswalker.com

  b)  The maximum amount to be advanced under the LOC is $1,500,000.00 through December 31, 2014 or through the date an Asset Purchase Agreement or similar document is signed by NRMC, the County and the purchaser of the hospital, whichever occurs last. The extension of the LOC after the Petition Date shall be referred to as the "**Post-Petition Indebtedness.**"

  c)  NRMC will provide UMB a Borrowing Base Certificate every 2 weeks reflecting services provided and logged by NRMC. The Borrowing Base Certificate shall be prepared by a

---

[2] The Standby Letter of Credit currently has an expiration date of August 4, 2014, which in accordance with its terms shall be automatically extended for an additional one (1) year period unless UMB sends notice to NRMC and the Bond Trustee no less than ninety (90) days prior to its current expiration date. Neither NRMC, nor the Bond Trustee have received such non-renewal notice and as such, the Standby Letter of Credit has been automatically renewed until August 4, 2015.

third party or submission of reliable evidence acceptable to UMB;

    d)    NRMC will implement immediately upon completion, the program currently under design to drop account receivables every two weeks;

    e)    NRMC will provide UMB copies of monthly financial documents within fifteen (15) days of month's ends, along with a rolling twenty-six (26) week Cash Flow every week. The UMB Terms control over any summary of said terms in this motion and are summarized for convenience purposes only in Paragraph a) through e) of this motion;

    f)    NRMC is indebted to Regions Bank, as Trustee for bond indebtedness as follows In 2006, the Mississippi Development Bank (the "**Development Bank**") issued Special Obligation Bonds, Series 2006 (Adams County, Mississippi Hospital Revenue Refunding and Improvement Bond Project), dated September 28, 2006, in the original principal amount of $18,075,000 and currently outstanding in the principal amount of $14,520,000 (the "**2006 Bonds**")[3] for the purpose of purchasing the Adams County, Mississippi Hospital Revenue Refunding Improvement Bond, Series 2006 (Natchez Regional Medical Center Project) dated September 28, 2006 (the "**County Bond**") in the original principal amount of $18,075,000 and currently outstanding in the principal amount of $14,520,000 issued pursuant to that certain Trust Indenture dated September 1, 2006 (the "**Original County Indenture**"), by and between the County, the Board of Trustees of NRMC and Regions Bank ("**Bond Trustee**"), as amended by the First Supplement to Trust Indenture (the "**First Supplement**") and collectively with the Original County Indenture, (the "**County and Hospital Indenture**") dated as of July 10, 2008. The County and Hospital Indenture permits NRMC only to enter into certain financing

---

[3] The Development Bank Bonds were issued pursuant to Trust Indenture (the "Development Bank Indenture") dated as of September 1, 2006 by and between the Development Bank and Regions Bank, as Trustee.

5

transactions and in July 2008, the County, NRMC and the Bond Trustee, with the consent of the Development Bank and MBIA Insurance Corporation, amended the Original County Indenture by entering into the First Supplement to provide for, among other things, certain revisions to the Original County Indenture, and to allow for the original LOC with UMB and the Standby Letter of Credit.

    g)    In order to extend the LOC and comply with the terms and conditions of the County and Hospital Indenture, NRMC requested and the County approved the UMB Terms, a copy of such minutes is attached hereto as **Exhibit "F"**. Additionally, NRMC requested the Development Bank and the Development Bank approved the UMB Terms, subject to approval by the Creditors' Committee of the Development Bank and the consent of National Public Finance Guarantee Corp. as the administrator of MBIA Insurance Corporation (the National Public Finance Guarantee Corp. and MBIA Insurance Corporation to be collectively referred to hereafter as the **"Bond Insurer"**), copies of such minutes are attached hereto as **Exhibit "G"**. Additionally, NRMC has requested the Creditors' Committee of the Development Bank and the Bond Insurer to approve the extension of the LOC through December 31, 2014.

**Bond Indebtedness Lien**

    9.    As of June 10, 2014, NRMC admits and stipulates that it is indebted to the Bond Trustee for the County Bond in the aggregate principal amount of $14,520,000. As security for repayment of the 2006 Bonds and the County Bond, the Bond Trustee holds, as further described in the Development Bank Indenture and the County and Hospital Indenture (and related documents connected with the 2006 Bonds and County Bond issuances), among other things (a) a valid, perfected and enforceable lien and security interest in the net revenues of NRMC, and in

all funds and accounts established under the County and Hospital Indenture and (b) the Standby Letter of Credit, (c) a fully-funded debt service reserve fund (funded by the Development Bank under the Development Bank Indenture, and not the property of the Debtor) held by the Bond Trustee, in the approximate amount of $ $1,219,068.58; (d) a pledge by the County of 5 mil *ad valorem* tax on all taxable property within the County pursuant to Section 41-13-25 of the Mississippi Code of 1972, as amended from time to time; and (e) an Intercept Agreement, pursuant to Section 31-25-27(13) of the Mississippi Code of 1972, as amended from time to time, providing for the interception of homestead taxes (and any other monies that the County is entitled to receive from time to time pursuant to any law and which is in possession of the Mississippi State Tax Commission or any other state agency, department or commission created pursuant to State law) if certain events occur (collectively, the "**Trust Estate**"). Payments of interest on the County Bond are due each January 1 and July 1 and principal payment is due each July 1. Pursuant to the County and Hospital Indenture, NRMC must make monthly payments consisting of one-sixth interest payment and one-twelfth principal payment due and NRMC is current with these monthly deposits.

**Bond Indebtedness Documents and Provisions:**

    a)    Trust Indenture dated September 1, 2006, by and between the County, the Board of Trustees of NRMC and the Bond Trustee, as amended by the First Supplement to Trust Indenture dated as of July 10, 2008 relating to the issuance of Adams County, Mississippi Hospital Revenue Refunding Improvement Bond Series 2006 (Natchez Regional Medical Center Project) dated September 28, 2006 -**Exhibit "H"**;

    b)    Indenture of Trust between the Development Bank and the Bond Trustee regarding the Bonds - **Exhibit "I"**;

    c)    Intercept Agreement dated September 28, 2009 by and between the Development Bank and the County - **Exhibit "J"**;

    d)    Amortization Schedule - **Exhibit "K"**;

| | |
|---|---|
| Amount of Loan: | $18,075,000.00 (Section 2.03 on page 11 of the Development Bank Indenture - **Exhibit "I"** |
| Interest Rate: | Varies by maturity of the Bonds - see the Amortization Schedule set forth in **Exhibit "K"**. |
| Collateral: | Net revenues of NRMC, all funds and accounts established under the County and Hospital Indenture, $875,000 Standby Letter of Credit, dated August 5, 2008, issued by UMB, as further described in the County and Hospital Indenture, a fully-funded debt service reserve fund (that was funded by the Development Bank and is not the property of the Debtor) held by the Bond Trustee in the approximate amount of $1,219,043.18; a pledge by the county of 5 mil *ad valorem* tax on all taxable property within the County pursuant to Section 41-13-25 of the Mississippi Code of 1972, as amended from time to time; and an Intercept Agreement, pursuant to Section 31-25-27(13) of the Mississippi Code of 1972, as amended from time to time providing for the interception of homestead taxes (and any other monies that the County is entitled to receive from time to time pursuant to any law and which is in possession of the Mississippi State Tax Commission or any other State agency, department or commission created pursuant to State law) if certain events occur. |

10.    NRMC proposes that the provisions of the Order, dated April 25, 2014 [Dkt. No. 137] remain in effect even if this relief is denied by the Court, specifically with respect to, but not limited to, any post-petition rights of UMB and super-priority claims of UMB through December 31, 2014. In accordance with Rule 4001(c), the nature and extent of certain provisions in the proposed order are as follows:

    a)    Extension of existing LOC and existing loan documents and continuation of sweep mechanism to pay down the LOC in accordance with past practice and the loan documents. All electronic payments must be deposited into existing bank accounts, but with a modified interest rate of 6.25% fixed, and all protections provided herein (including specifically item (j) below) from the maturity of the aforementioned extension until December 31, 2014. UMB's loan will be paid from the sales proceeds and the liquidation of its collateral, the accounts receivable. In the event that the DIP financing order period has expired before a

8

sale closing, access to the LOC shall cease but the cash and A/R protections, sweep mechanism and replacement liens shall remain in place as a first and superpriority lien under Section 364(d)(1) until the loan is paid in full at closing;

b) Holding maximum advanced under the LOC to $1,500,000.00 through receipt of DSH and UPL installment payments, due in March and June, 2014, through December 31, 2014;

c) No payment of overdraft checks;

d) A borrowing base certificate prepared by a third party or other reliable evidence acceptable to UMB of services provided and logged by NRMC every two (2) weeks;

e) Copy of Letter of Intent with stalking horse bidder, if any;

f) Upon request of UMB, counsel to NRMC will, subject to consent of buyer/bidder's counsel, provide timely access to buyer/bidder counsel to independently confirm the existence of actual sale negotiations and status, or will otherwise provide confirmation to UMB;

g) Immediate and unrestricted access to sale data room, subject to a Non-Disclosure Agreement being executed by UMB limited exclusively to items to which NRMC is also subject to a Non-Disclosure Agreement;

h) Horne group presence on premises to review financial statements prepared by NRMC. Horne group will be available to answer questions from UMB and/or its counsel;

i) NRMC will implement immediately upon completion, the program currently under design to drop A/R every two weeks;

j) Prior approval of form and content of 1st day motions to be used in Chapter 9 filing as it pertains to protection of UMB's interests, including specifically the DSH and UPL installment payments to be received by NRMC from the State of Mississippi shortly after filing, cash and A/R protections and replacement liens which shall be a first and super-priority lien under Section 364(d)(1) on all A/R over all other liens and claims, including unpaid administrative expenses (with the exception of a carve-out for Debtor's professionals only and critical employees not to exceed $425,000);

k) Prior approval of form and content by UMB counsel of any sale motion and sale order, as well as any Plan of Adjustment and Order confirming same, as they

pertain to UMB's claims.

l)     A waiver and/or release by NRMC and its successors, assigns, representatives (including counsel), employees and board members of any and all claims, of NRMC against UMB, its representative, employees, board members and attorneys, as of the date of the bankruptcy petition;

m)     UMB and its counsel will be provided with copies of monthly financial documents within fifteen (15) days of months end. UMB and its counsel will also be provided with a rolling twenty-six (26) week Cash Flow every week;

n)     Payment of reasonable legal fees incurred on behalf of UMB to date, in conjunction with the negotiation and the enforcement of the interim and post-petition financing; and

o)     Payment in full at closing of any sale of NRMC of the balance owed to UMB by NRMC under the loan documents with UMB (including any unpaid attorney's fees, interest, termination fees ($25,000.00) and any other fees);

p)     Items (e) and (m) will be subject to any required Confidentiality Agreement between NRMC and any party to the LOI, an Asset Purchase Agreement and/or a Non-Disclosure Agreement as referenced in (g) above; and

q)     A bed count census to be provided by NRMC weekly to UMB.

11.     NRMC is unable to obtain unsecured credit allowable under Section 503(b)(1) as an administrative expense. NRMC must extend the LOC with UMB in order to preserve and maintain the assets of the estate and the sale of the Hospital. NRMC is unable to obtain the post-petition financing without the extension of the LOC with UMB and granting UMB the liens provided under this Motion. As such, NRMC proposes to grant UMB a first and super-priority lien and replacement liens (as further described below and in the UMB Terms) under Section 364(c) and (d)(1) on all accounts over all other liens and claims including unpaid administrative expenses (with the exception of a carve-out for Debtor's professionals and critical employees in the amount of $425,000.00 (the **"Carve-Out"**) which carve-out has already been funded by UMB

conditional on approval of this Motion.)

12. The Pre-Petition Financing and Post-Petition Financing have been negotiated in good faith and at arms-length between NRMC and UMB, and such terms and conditions have been approved by the County and specifically stated in the UMB Terms as described in Paragraph 10, are permitted under the County and Hospital Indenture, and any credit extended and loans made to NRMC have been extended in good faith as required by, and within the meaning of, Bankruptcy Code §364(e) and UMB is entitled to the protections of Bankruptcy Code §364(e). NRMC waives any rights under 506(c) against UMB's collateral.

13. The terms of the Pre-Petition Financing and the Post-Petition Financing are fair and reasonable, reflect NRMC's exercise of prudent business judgment consistent with its fiduciary duties, and that the lien, security interest, and administrative claim granted to UMB in conjunction with the Pre-Petition Financing and the Post-Petition Financing are supported by reasonably equivalent value and fair consideration. The Pre-Petition Financing and the Post-Petition financing shall be according to the terms of the UMB Loan Documents.

14. NRMC requests entry of an Order pursuant to Bankruptcy Rule 4001(c)(2), Approving an Extension of Pre-Petition Financing and the Post-Petition Financing. The authorization requested herein is necessary to avoid immediate and irreparable harm to NRMC and its estate.

15. NRMC requests authority to use collateral of UMB and/or obtain credit from UMB, on the terms and subject to the conditions and limitations in availability set forth in this Motion. NRMC is authorized to use the proceeds in the operation of NRMC's business, provided that (i) the proposed use or borrowing is in compliance with the terms of the UMB Loan

Documents, the County and Hospital Indenture, and this Motion, and (ii) NRMC's use of funds is in accordance with the budget prepared by NRMC (the "**Budget**"), a copy of which is attached hereto and incorporated herein by reference as **Exhibit "A"**.

16. As adequate protection to UMB, NRMC will continue to deposit the proceeds from NRMC's Accounts to its' operating account. UMB shall be entitled (as a payment by NRMC) to apply all funds from NRMC's Accounts as provided in the Loan Documents and this Motion. UMB is authorized to apply funds transferred to reduce permanently outstanding Pre-Petition and Post-Petition Indebtedness. Payments received by UMB from NRMC will be applied in accordance with the debt service and repayment terms of the Loan Documents.

17. Pursuant to Section 5.04 of the County and Hospital Indenture, NRMC will continue to make all payments under the County Bond and the County and Hospital Indenture, when due, to the Bond Trustee for the benefit of the Development Bank and the Bondholders, including without limitation NRMC's monthly deposits to the Bond Trustee from NRMC's net revenues. The Bond Trustee shall be authorized and entitled (as a payment by NRMC) to apply the monthly deposits as provided in the Bond Indebtedness Documents and the Order, including applying the monthly deposits towards the payment of debt service on the Bonds due on the dates set forth in the County and Hospital Indenture and Development Bank Indenture. Monthly deposits received by the Bond Trustee from NRMC will be applied in accordance with the Bond Indebtedness Documents. Upon entry of the Order, the Bond Trustee shall have a modification of the Automatic Stay and any other applicable stay or injunction as provided herein. Pursuant to such stay relief, all stays and injunctions in the Bankruptcy Case, including, but not limited to, the Automatic Stay under Bankruptcy Code Section 362(a), will be modified as to the Bond

Trustee and with respect to the enforcement of its remedies against the Trust Estate under the County and Hospital Indenture. In accordance with such relief modifying the Automatic Stay and any and all other applicable stays and injunctions; (i) the Bond Trustee will have the right to enforce its remedies against the Trust Estate; and (ii) NRMC expressly and irrevocably waives and releases any right to claim, in this Court or in any other Federal Court or State Court, that any stay, injunction or other restraint or prohibition of any kind should be issued, imposed or reimposed against or with respect to the Bond Trustee or any item of the Trust Estate. Without limiting the foregoing, NRMC or other parties in interest will have the limited right to challenge the occurrences of an event of default under the County and Hospital Indenture.

18. Upon entry of an Order granting this Motion, UMB and the Bond Trustee shall have a modification of the Section 362 Automatic Stay to allow them to accept payments from NRMC.

19. Any funds borrowed from UMB after the Petition Date under this Motion shall be referred to as "**New Obligations**". In accordance with Bankruptcy Code §§ 364(c)(1) and 507(b), the New Obligations shall constitute claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, and shall at all times be senior to the rights of NRMC, or any subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceedings if NRMC's case is converted to a case Under Chapter 7 of the Bankruptcy Code (the "**Super-Priority Claims**"), except for wages or salaries, taxes and debtor's professionals' fees as agreed to by UMB.

20. As security for the New Obligations, and as provided in the UMB Note, UMB

shall have and is hereby granted (effective and continuing without the necessity of the execution, filing and/or recordation of mortgage, security agreements, patent security agreements, trademarks security agreements, pledge agreements, financing statements or otherwise), valid and perfected security interests and liens (the **"Liens"**) in UMB's pre-petition collateral, and the proceeds thereon now owned or hereinafter acquired or generated by NRMC's Accounts. The Liens shall secure payment of all such New Obligations used by NRMC since the Petition Date and pursuant to the orders on the Motion and any extensions thereof.

21. The Liens and Super-Priority Claims granted to UMB pursuant to the UMB Loan Documents and this Motion shall be subject only to the Carve-Out.

22. Without limiting the rights of access and information afforded UMB, the Bond Trustee, the Development Bank and the Bond Insurer under the respective Loan Documents and Bond Indebtedness Documents, NRMC shall be required to provide representatives, agents and/or employees of UMB, the Bond Trustee, the Development Bank and the Bond Insurer access to NRMC's premises and records in accordance with the respective Loan Documents and Bond Indebtedness Documents and shall otherwise cooperate, consult with, and provide to such persons all such non-privileged information and information not subject to a binding confidentiality agreement as they may reasonably request. NRMC shall also provide to UMB, the Bond Trustee, the Development Bank and the Bond Insurer, at the time filed or provided, all statements, schedules or financial reports which NRMC files in the Bankruptcy case, and information about the ongoing process for sale of NRMC. Without limitation, the information, documents and consent approval opportunities to be provided to UMB as described in paragraph 10(e), (f), (g), (h), (i), (j), (k) and (m) above shall also be timely provided to the Bond Trustee,

the Development Bank and the Bond Insurer.

23. NRMC shall be liable for all New Obligations.

24. UMB is extending credit and making the loans to NRMC in good faith. Accordingly, UMB is entitled to the full protection of Bankruptcy Code §364(e) with respect to the New Obligations and the Liens created, adjudicated or authorized by an Order granting the Motion in the event that any Order granting this Motion or any finding, adjudication, or authorization contained herein is stayed, vacated, reversed or modified on appeal.

25. Nothing in the Loan Documents, the Bond Indebtedness Documents or any Order granting the Motion shall be construed as a consent by UMB or the Bond Trustee, the Development Bank or the Bond Insurer, or an approval by UMB or the Bond Trustee, the Development Bank or the Bond Insurer of the terms of any asset sale, plan or any amendment or modification thereto.

26. NRMC is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the County Bond, as the Bond Trustee may reasonably require, as evidence of and for the protection of the County Bond, or which otherwise may be deemed reasonably necessary by the Bond Trustee to effectuate the terms and conditions of the Order and the County Bond.

### Notice

27. A final hearing will be held in connection with the Motion as set by the Court. Notice of this Motion has been provided to all secured creditors, the 20 largest unsecured creditors, and all taxing authorities, the United States Attorney and counsel of record.

## Conclusion

28. NRMC respectfully requests that this Court, upon consideration of the Motion, grant the Motion and grant NRMC such other further relief to which it may be entitled.

This the _____ day of _____, 2014.

Respectfully submitted,

NATCHEZ REGIONAL MEDICAL CENTER

_____
EILEEN N. SHAFFER, Its Attorney

EILEEN N. SHAFFER, MSB #1687
Post Office Box 1177
Jackson, Mississippi 39215-1177
Ph: (601) 969-3006; Fax: (601) 949-4002
Email: enslaw@bellsouth.net

J. WALTER BROWN, JR., MSB #4613
Post Office Box 963
Natchez, Mississippi 39121
Ph: (601) 442-4242
Email: wlawfirm@bellsouth.net

## CERTIFICATE OF SERVICE

I, Eileen N. Shaffer, Attorney for Natchez Regional Medical Center, do hereby certify that I have this date mailed, by United States Mail, postage prepaid, a true and correct copy of the above and foregoing *Amended Motion for Approval of Extension of Final Order for (I) Obtaining Credit, (II) Modifying Automatic Stay, and (III) Granting Post-Petition Liens* to the 20 Largest Unsecured Creditors, all attorneys having filed a notice of appearance and to the following on the day and year hereinafter set forth:

Timothy A. Ford, Esq.
Christian B. Waddell, Esq.
Attorneys for Mississippi Development Bank
tford@balch.com
cwaddell@balch.com

Christopher R. Maddux, Esq.
Elizabeth F. Thomas, Esq.
John F. England, Esq.
Stephen W. Rosenblatt, Esq.
chris.maddux@butlersnow.com
elizabeth.thomas@butlersnow.com
john.england@butlersnow.com
Steve.Rosenblatt@butlersnow.com

Alan L. Smith, Esq.
Attorney for M. D. Properties, LLC and Regions Bank,
As Indenture Trustee for the MS Development Bank
Special Obligation Bonds, Series 2006, (Adams County,
MS Hospital Revenue Refunding and Improvement Bond Project)
asmith@bakerdonelson.com

Craig M. Geno, Esq.
Attorney for MBIA, Ins. Corp. and National Public
Finance Guarantee Corp.
cmgeno@cmgenolaw.com

Robert N. H. Christmas, Esq.
Attorney for MBIA, Ins. Corp. and National Public
Finance Guarantee Corp.
rchristmas@nixonpeabody.com

Richard A. Montague, Jr., Esq.
James W. O'Mara, Esq.
Laura M. Glaze, Esq.

17

Attorneys for Valley Services, Inc. and
Keystone Medical Services of MS, Inc.
richard.montague@phelps.com
omaraj@phelps.com
laura.glaze@phelps.com

Craig N. Landrum, Esq.
Kristina M. Johnson, Esq.
Attorney for United Mississippi Bank
clandrum@joneswalker.com
kjohnson@joneswalker.com

Marcus Wilson, Esq.
Andrew R. Wilson, Esq.
Attorneys for De Lage Landen Financial Services, Inc.
mwilson@blswlaw.com
awilson@blswlaw.com

L. Jackson Lazarus, Esq.
Attorney for Adams County Board of Supervisors
jacklaz@cableone.net

Christopher A. Ward, Esq.
Attorney for Blood Systems, Inc. d/b/a United
Blood Services and Blood Systems Laboratories
222 Delaware Ave., Suite 1101
Wilmington, DE 19801
cward@polsinelli.com

Patrick F. McAllister, Esq.
Attorney for Compliant Healthcare Technologies
pmcallister@wmjlaw.com

Phillip A. Martin, Esq.
Attorney for TherEx, Inc.
pmartin@fmhd.com

**SO CERTIFIED** this the \_\_\_16th\_\_\_ day of \_\_\_June\_\_\_, 2014.

_____
EILEEN N. SHAFFER