

SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: July 7, 2014**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                                                    CHAPTER 9

NATCHEZ REGIONAL MEDICAL CENTER                          CASE NO. 14-01048-NPO

### ORDER APPROVING AMENDED MOTION FOR EXTENSION OF FINAL ORDER FOR (I) OBTAINING CREDIT, (II) MODIFYING AUTOMATIC STAY, AND (III) GRANTING POST-PETITION LIENS THROUGH AND INCLUDING DECEMBER 31, 2014

**THIS MATTER** comes before the Court upon the Amended Motion for Extension of Final Order for (i) Obtaining Credit, (ii) Modifying Automatic Stay, and (iii) Granting Post-Petition Liens through and including December 31, 2014 [Dkt. No. 239] filed by Natchez Regional Medical Center ("**NRMC**"). After reviewing the facts and considering the same, the Court finds that the Motion is well-taken and should be granted. The Court does hereby find, order and adjudicate as follows:

1.        That the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334, 28, 157, 364, 362, 901, 928, Rule 4001 of the Federal Rules of Bankruptcy Procedure and other related code sections and rules.

2.        This matter is a core proceeding.

3.        On March 26, 2014 (the "**Petition Date**"), NRMC filed with this Court its Voluntary Petition (the "**Petition**") for relief under Chapter 9 of Title 11, United States Code (the "**Bankruptcy Code**"). NRMC remains in possession of its assets and properties.

4.        The Debtor is a 179 bed hospital facility located in Natchez, Mississippi and owned by Adams County, Mississippi (the "**County**"). It has operated since 1960 and its intent is

to sell the hospital pursuant to Section 41-13-15 of the Mississippi Code of 1972, as amended,

and pay all of its creditors in full.

## Statement of Relief Requested

5.      NRMC is requesting authority to extend the terms and conditions of the Line of

Credit (the "**LOC**") and the existing loan documents with United Mississippi Bank ("**UMB**")

through December 31, 2014 to pay necessary operating expenses to protect the assets of the

estate in order to complete a sale of the hospital. The funds are to be used by NRMC according to

the attached 26 week cash flow **Exhibit "A"**. In the event NRMC uses collateral of UMB or

borrows post-petition funds, on the existing LOC, then UMB is to be granted a post-petition

continuing lien on its pre-petition collateral, including NRMC's cash and accounts receivables,

DSH and UPL installment payments.

6.      As of the Petition Date, NRMC is obligated to UMB, on a Revolving Loan Note,

originally dated August 5, 2008, renewed most recently on August 2, 2012 and supported by

draw notes renewed on December 12, 2013 in the amount of $3,000,000.00 and a draw note

renewed on January 17, 2014 in the amount of $875,000.00 for a total principal amount of

$3,875,000.00 ("**UMB Note**").   By agreement, the December 12, 2013 $3,000,000.00 draw note

is currently limited to $1,500,000.00. UMB was granted a lien pursuant to a Commercial Security

Agreement dated August 5, 2008 ("**UMB Security Agreement**") renewed on August 2, 2012

and Assignments of Deposit Accounts renewed on the same date and August 8, 2012 and

perfected   by the filing of a UCC-1 Financing Statement, dated August 8, 2008, with the

Mississippi Secretary of State's Office (File No. 2008016780A) as amended by the filing of a

UCC-3 Financing Statement, dated February 19, 2013 (File No. 20130951703B)(collectively, the

"**Financing Statements**").   The principal, interest, costs, expenses, and other amounts owing

under the UMB Note are referred to herein collectively as the "**Pre-Petition Indebtedness**".

7.    Computed as of June 10, 2014 NRMC admits and stipulates that it is indebted to UMB in the aggregate amount of approximately $ 260,848.19 comprised of: unpaid principal and interest NRMC believes that, as security for repayment of the Indebtedness, UMB holds valid, perfected, and enforceable liens and security interests in the NRMC's accounts, deposits, accounts receivables, including DSH and UPL installment payments, as described in the UMB Security Agreement and the Financing Statements. NRMC believes that UMB's liens and security interests include, among other things, first priority liens and security interests in NRMC's Accounts including Health Care Insurance Receivables, DSH and UPL installment payments.

**UMB Documents and Provisions:**

a)    Extension of existing Loan Documents (listed below) until December 31, 2014 and reinstitution of Sweep Agreement to pay down the LOC in accordance with NRMC's past practice and the Loan Documents in accordance with the terms of the letter agreement dated March 21, 2014 which are incorporated in pertinent part herein (the "**UMB Terms**")(which terms control over any summary of said terms in this Order) and modifications set out in this Order. All electronic payments will be deposited into the existing bank accounts.

The Loan Documents are as follows:

i)    Base Promissory Note dated August 2, 2012 (renewal of Revolving Loan Note dated August 5, 2008) supported by a draw note dated December 12, 2013, with the original principal limit of $3,000,000.00 and a draw note in the amount of $875,000.00 dated January 17, 2014. **Exhibit "B"**[1];

ii)    Renewal Business Loan Agreement, Commercial Security Agreement, Assignment of Deposit Account dated August 2, 2012 and Assignment of Deposits Account dated August 5, 2008. **Exhibit "C"**;

iii)    Lockbox and Account Control Agreement dated August 5, 2008. **Exhibit "D"**;

iv)    UCC-1 Financial Statement dated August 5, 2008 - **Exhibit "E"** and

---

[1] Exhibits B-K were attached to the Motion for Approval (Dkt. No. 69) and the Amended Motion [Dkt. Nos. 112 and 122] and are deemed incorporated.

UCC-1 Financing Statement Amendment filed February 19, 2013.

v)    Borrowing Base Certificate;*

vi)    Line of Credit Sweep Agreement;*

vii)    $875,000 Irrevocable Standby Letter of Credit No. 3(2008) dated August 5, 2008 (the "**Standby Letter of Credit**);[2] * and

viii)    Standby Letter of Credit Reimbursement Agreement

* These United Mississippi Bank loan documents are voluminous and therefore are not attached in full.   A complete set of loan documents may be requested from counsel for United Mississippi Bank by directing such request to Kristina M. Johnson, Esq. P.O. Box 427, Jackson, Mississippi 39205-0427, 601-949-4785, kjohnson@joneswalker.com

b)    The maximum amount to be advanced under the LOC is $1,500,000.00 through

December 31, 2014. The extension of the LOC after the Petition Date shall be referred to as the

"**Post-Petition Indebtedness.**"

c)    NRMC will provide UMB a Borrowing Base Certificate every 2 weeks reflecting

services provided and logged by NRMC.   The Borrowing Base Certificate shall be prepared by a

third party or submission of reliable evidence acceptable to UMB;

d)    NRMC will implement immediately upon completion, the program currently

under design to drop account receivables every two weeks;

e)    NRMC will provide UMB copies of monthly financial documents within fifteen

(15) days of month's ends, along with a rolling twenty-six (26) week Cash Flow every week. The

UMB Terms control over any summary of said terms in this Order and are summarized for

convenience purposes only in Paragraph a) through e) of this Order;

---

[2] The Standby Letter of Credit currently has an expiration date of august 4, 2014, which in accordance with its terms shall be automatically extended for an additional one (1) year period unless UMB send notice to NRMC and the Bond Trustee no less than ninety (90) days prior to its current expiration date. Neither NRMC, nor the Bond Trustee have received such non-renewal notice and as such, the Standby Letter of Credit has been automatically renewed

4

f)      NRMC is indebted to Regions Bank, as Trustee for bond indebtedness as follows

In 2006, the Mississippi Development Bank (the "**Development Bank**") issued Special

Obligation Bonds, Series 2006 (Adams County, Mississippi Hospital Revenue Refunding and

Improvement Bond Project), dated September 28, 2006, in the original principal amount of

$18,075,000 and currently outstanding in the principal amount of $14,520,000

(the "**2006 Bonds**")[3] for the purpose of purchasing the Adams County, Mississippi Hospital

Revenue Refunding Improvement Bond, Series 2006 (Natchez Regional Medical Center Project)

dated September 28, 2006 (the "**County Bond**") in the original principal amount of $18,075,000

and currently outstanding in the principal amount of $14,520,000 issued pursuant to that certain

Trust Indenture dated September 1, 2006 (the "**Original County Indenture**"), by and between

the County, the Board of Trustees of NRMC and Regions Bank ("**Bond Trustee**"), as amended

by the First Supplement to Trust Indenture (the "**First Supplement**") and collectively with the

Original County Indenture, (the "**County and Hospital Indenture**") dated as of July 10, 2008.

The County and Hospital Indenture permits NRMC only to enter into certain financing

transactions and in July 2008, the County, NRMC and the Bond Trustee, with the consent

of the Development Bank and MBIA Insurance Corporation (the "**Bond Insurer**"), amended the

Original County Indenture by entering into the First Supplement to provide for, among other

things, certain revisions to the Original County Indenture, and to allow for the original LOC

with UMB and the Standby Letter of Credit.

g)      In order to extend the LOC and comply with the terms and conditions of the

County and Hospital Indenture, NRMC has requested and the County has approved the UMB

---

until August 4, 2015.

Terms - **Exhibit "F"**. Additionally, NRMC has requested the Development Bank and National

Public Finance Guarantee Corp. as the administrator of MBIA Insurance Corporation (the

National Public Finance Guarantee Corp. and the Bond Insurer to be collectively referred to

hereafter as the **"Bond Insurer"**) to approve the UMB Terms all in compliance with the County

and Hospital Indenture. The Creditors' Committee of the Development Bank has approved the

UMB Terms subject to review of final loan documentation by Development Bank's counsel and

the consent of the Bond Insurer - **Exhibit "G"**.

## Bond Indebtedness Lien

8.     As of March 23, 2014, NRMC admits and stipulates that it is indebted to the Bond

Trustee for the County Bond in the aggregate principal amount of $14,520,000. As security for

repayment of the 2006 Bonds and the County Bond, the Bond Trustee holds, as further described

in the Development Bank Indenture and the County and Hospital Indenture (and related

documents connected with the 2006 Bonds and County Bond issuances), among other things (a)

a valid, perfected and enforceable lien and security interest in the net revenues of NRMC, and in

all funds and accounts established under the County and Hospital Indenture and (b) an

irrevocable $875,000 Standby Letter of Credit, dated August 5, 2008, issued by UMB, (c) a

fully-funded debt service reserve fund (funded by the Development Bank under the Development

Bank Indenture, and not the property of the Debtor) held by the Bond Trustee, in the approximate

amount of $1,219,067.58; (d) a pledge by the County of 5 mil *ad valorem* tax on all taxable

property within the County pursuant to Section 41-13-25 of the Mississippi Code of 1972, as

amended from time to time; and (e) an Intercept Agreement, pursuant to Section 31-25-27(13) of

the Mississippi Code of 1972, as amended from time to time, providing for the interception of

6

homestead taxes (and any other monies that the County is entitled to receive from time to time

pursuant to any law and which is in possession of the Mississippi State Tax Commission or any

other state agency, department or commission created pursuant to State law) if certain events

occur (collectively, the "**Trust Estate**"). Payments of interest on the County Bond are due each

January 1 and July 1 and principal payment is due each July 1. Pursuant to the County and

Hospital Indenture, NRMC must make monthly payments consisting of one-sixth interest

payment and one-twelfth principal payment due and NRMC is current with these monthly

deposits.

**Bond Indebtedness Documents and Provisions**:

    a)    Trust Indenture dated September 1, 2006, by and between the County, the Board of Trustees of NRMC and the Bond Trustee, as amended by the First Supplement to Trust Indenture dated as of July 10, 2008 relating to the issuance of Adams County, Mississippi Hospital Revenue Refunding Improvement Bond Series 2006 (Natchez Regional Medical Center Project) dated September 28, 2006 -**Exhibit "H"**;

    b)    Indenture of Trust between the Development Bank and the Bond Trustee regarding the Bonds - **Exhibit "I"**;

    c)    Intercept Agreement dated September 28, 2009 by and between the Development Bank and the County - **Exhibit "J"**;

    d)    Amortization Schedule - **Exhibit "K"**;

Amount of Loan:    $18,075,000.00 (Section 2.03 on page 11 of the Development Bank Indenture - **Exhibit "I"**)

Interest Rate:    Varies by maturity of the Bonds - see the Amortization Schedule set forth in **Exhibit "K"**).

Collateral:    Net revenues of NRMC, all funds and accounts established under the County and Hospital Indenture, $875,000 Standby Letter of Credit, dated August 5, 2008, issued by UMB, as further described in the County and Hospital Indenture, a fully-funded debt service reserve fund (that was funded by the Development Bank and is not the property of the Debtor)

held by the Bond Trustee in the approximate amount of $1,219,043.18; a
pledge by the county of 5 mil *ad valorem* tax on all taxable property within
the County pursuant to Section 41-13-25 of the Mississippi Code of 1972,
as amended from time to time; and an Intercept Agreement, pursuant to
Section 31-25-27(13) of the Mississippi Code of 1972, as amended from
time to time providing for the interception of homestead taxes (and any
other monies that the County is entitled to receive from time to time
pursuant to any law and which is in possession of the Mississippi State
Tax Commission or any other State agency, department or commission
created pursuant to State law) if certain events occur.

9.    The provisions of this Order shall remain in effect even if relief is denied by the

Court, specifically with respect to, but not limited to, any post-petition rights of UMB and

super-priority claims of UMB through December 31, 2014. In accordance with Rule 4001(c), the

nature and extent of the relief provided is as follows:

a)    Extension of existing LOC and existing loan documents and continuation of
sweep mechanisms to pay down the LOC in accordance with past practice and the
loan documents. All electronic payments must be deposited into existing bank
accounts, but with a modified interest rate of 6.25% fixed, and all
protections provided herein (including specifically item (j) below) from the
maturity of the aforementioned extension until December 31, 2014, upon the
conditions set forth herein and in prior orders of this Court. UMB's loan will be
paid from the sales proceeds and the liquidation of its collateral, the accounts
receivables. In the event that the DIP financing order period has expired before a
sale closing, access to the LOC shall cease but the cash and A/R protections,
sweep mechanism and replacement liens shall remain in place as a first and
superpriority lien under Section 364(d)(1) until the loan is paid in full at closing;

b)    As a condition precedent to continue to fund the extension of credit hereunder and
specifically after September 15, 2014 through December 31, 2014, NRMC shall
provide UMB a signed Asset Purchase Agreement no later than September 15,
2014 unless UMB consents in writing (with a copy of said written consent to be
provided to all counsel to this order) to extend the September 15, 2014 deadline
for NRMC to provide the signed APA. In the event the funding by UMB
automatically ceases on September 15, 2014 due to the failure of NRMC to satisfy
this condition, all protections provided to UMB under this order and the Order
dated April 25, 2014 [Dkt. No. 137] shall survive in spite of no further funding
commitment by UMB as specifically provided by paragraph 9(a).

c)    Holding maximum advanced under the LOC to $1,500,000.00 through receipt of

8

DSH and UPL installment payments, due in March and June, 2014 through July 15, 2014;

d)     No payment of overdraft checks;

e)     A borrowing base certificate prepared by a third party or other reliable evidence acceptable to UMB of services provided and logged by NRMC every two (2) weeks;

f)     Copy of Letter of Intent with stalking horse bidder, if any;

g)     Upon request of UMB, counsel to NRMC will, subject to consent of buyer/bidder's counsel, provide timely access to buyer/bidder counsel to independently confirm the existence of actual sale negotiations and status, or will otherwise provide confirmation to UMB;

h)     Immediate and unrestricted access to sale data room, subject to a Non-Disclosure Agreement being executed by UMB limited exclusively to items to which NRMC is also subject to a Non-Disclosure Agreement;

i)     Horne group presence on premises to review financial statements prepared by NRMC. Horne group will be available to answer questions from UMB and/or its counsel;

j)     NRMC will implement immediately upon completion, the program currently under design to drop A/R every two weeks;

k)     Prior approval of form and content of 1st day motions to be used in Chapter 9 filing as it pertains to protection of UMB's interests, including specifically the DSH and UPL installment payments to be received by NRMC from the State of Mississippi shortly after filing, cash and A/R protections and replacement liens which shall be a first and super-priority lien under Section 364(d)(1) on all A/R over all other liens and claims, including unpaid administrative expenses (with the exception of a carve-out for Debtor's professionals only and critical employees not to exceed $425,000);

l)     Prior approval of form and consent by UMB counsel of any sale motion and sale order, as well as any Plan of Adjustment and order confirming same, as they pertain to UMB.

m)     A waiver and/or release by NRMC and its successors, assigns, representatives (including counsel), employees and board members of any and all claims, of NRMC against UMB, its representative, employees, board members and attorneys, as of the date of the bankruptcy petition;

9

n)    UMB and its counsel will be provided with copies of monthly financial documents within fifteen (15) days of months end. UMB and its counsel will also be provided with a rolling twenty-six (26) week Cash Flow every week;

o)    An extension fee of $50,000.00 upon execution hereof by NRMC.

p)    Payment of reasonable legal fees incurred on behalf of UMB to date, in conjunction with the negotiation and the enforcement of post-petition financing.

q)    Payment in full at closing of any sale of NRMC of the balance owed to UMB by NRMC under the loan documents with UMB (including any unpaid attorney's fees, interest, termination fees ($25,000.00) and any other fees);

r)    Items (e) and (m) will be subject to any required Confidentiality Agreement between NRMC and any party to the LOI, an Asset Purchase Agreement and/or a Non-
Disclosure Agreement as referenced in (g) above; and

s)    A bed count census to be provided by NRMC weekly to UMB.

11.    NRMC is unable to obtain unsecured credit allowable under Section 503(b)(1)

as an administrative expense. NRMC must extend the LOC with UMB in order to preserve and

maintain the assets of the estate and the sale of the Hospital. NRMC is unable to obtain the

post-petition financing without the extension of the LOC with UMB and granting UMB the liens

provided under the Motion. As such, NRMC proposes to grant UMB a first and super-priority

lien and replacement liens (as further described below and in the UMB Terms under Section

364(c) and (d)(1) on all accounts over all other liens and claims including unpaid administrative

expenses (with the exception of a carve-out for Debtor's professionals and critical employees in

the amount of $425,000.00 (the "**Carve-Out**") which carve-out has already been funded by UMB

conditional on approval of the Motion.)

12.    The Pre-Petition Financing and Post-Petition Financing have been negotiated in

good faith and at arms-length between NRMC and UMB, and such terms and conditions have

been approved by the County and specifically stated in the UMB Terms as described in

Paragraph 10, are permitted under the County and Hospital Indenture, and any credit extended

and loans made to NRMC have been extended in good faith as required by, and within the

meaning of, Bankruptcy Code §364(e) and UMB is entitled to the protections of Bankruptcy

Code §364(e). NRMC waives any rights under 506(c) against UMB's collateral.

13.    The terms of the Pre-Petition Financing and the Post-Petition Financing are fair

and reasonable, reflect NRMC's exercise of prudent business judgment consistent with its

fiduciary duties, and that the lien, security interest, and administrative claim granted to UMB in

conjunction with the Pre-Petition Financing and the Post-Petition Financing are supported by

reasonably equivalent value and fair consideration. The Pre-Petition Financing and the

Post-Petition financing shall be according to the terms of the UMB Loan Documents.

14.    NRMC requests entry of an Order pursuant to Bankruptcy Rule 4001(c)(2),

approving Pre-Petition Financing and the Post-Petition Financing. The authorization requested

herein is necessary to avoid immediate and irreparable harm to NRMC and its estate.

15.    NRMC requests authority to use collateral of UMB and/or obtain credit from

UMB, on the terms and subject to the conditions and limitations in availability set forth in this

Order. NRMC is authorized to use the proceeds in the operation of the NRMC's business,

provided that (i) the proposed use or borrowing is in compliance with the terms of the UMB

Loan Documents, the County and Hospital Indenture, and this Order, and (ii) NRMC's use of

funds is in accordance with the budget prepared by NRMC (the "**Budget**"), a copy of which is

attached hereto and incorporated herein by reference as **Exhibit "A"**.

11

16.     As adequate protection to UMB, NRMC will continue to deposit the proceeds

from NRMC's Accounts to its' operating account. UMB shall be entitled (as a payment by

NRMC) to apply all funds from NRMC's Accounts as provided in the Loan Documents and this

Order. UMB is authorized to apply funds transferred to reduce permanently outstanding

Pre-Petition and Post-Petition Indebtedness. Payments received by UMB from NRMC will be

applied in accordance with the debt service and repayment terms of the Loan Documents.

17.     Pursuant to Section 5.04 of the County and Hospital Indenture, NRMC will

continue to make all payments under the County Bond and the County and Hospital Indenture,

when due to the Bond Trustee for the benefit of the Development Bank and the Bondholders,

including without limitation NRMC's monthly deposits to the Bond Trustee from NRMC's net

revenues. The Bond Trustee shall be authorized and entitled (as a payment by NRMC) to apply

the monthly deposits as provided in the Bond Indebtedness Documents and this Order, including

applying the monthly deposits towards the payment of debt service on the Bonds due on the dates

set forth in the County and Hospital Indenture and Development Bank Indenture. Monthly

deposits received by the Bond Trustee from NRMC will be applied in accordance with the Bond

Indebtedness Documents. Upon entry of this Order, the Bond Trustee shall have a modification

of the Automatic Stay and any other applicable stay or injunction as provided herein. Pursuant to

such stay relief, all stays and injunctions in the Bankruptcy Case, including, but not limited to,

the Automatic Stay under Bankruptcy Code Section 362(a), will be modified as to the Bond

Trustee and with respect to the enforcement of its remedies against the Trust Estate under the

County and Hospital Indenture. In accordance with such relief modifying the Automatic Stay and

any and all other applicable stays and injunctions: (i) the Bond Trustee will have the right to

enforce its remedies against the Trust Estate; and (ii) NRMC expressly and irrevocably waives

and releases any right to claim, in this Court or in any other Federal Court or State Court, that any

stay, injunction or other restraint or prohibition of any kind should be issued, imposed or

reimposed against or with respect to the Bond Trustee or any item of the Trust Estate. Without

limiting the foregoing, NRMC or other parties in interest will have the limited right to challenge

the occurrence of an event of default under the County and Hospital Indenture.

18.    UMB and the Bond Trustee are granted a modification of the Section 362

Automatic Stay to allow them to accept payments from NRMC.

19.    Any funds borrowed from UMB after the Petition Date under this Order shall be

referred to as "**New Obligations**". In accordance with Bankruptcy Code §§ 364(c)(1) and 507(b),

the New Obligations shall constitute claims with priority in payment over any and all

administrative expenses of the kinds specified or ordered pursuant to any provision of the

Bankruptcy Code, and shall at all times be senior to the rights of NRMC, or any subsequent

proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7

proceedings if NRMC's case is converted to a case Under Chapter 7 of the Bankruptcy Code (the

"**Super-Priority Claims**"), except for wages or salaries, taxes and debtor's professionals' fees as

agreed to by UMB.

20.    As security for the New Obligations, and as provided in the UMB Note, UMB

shall have and is hereby granted (effective and continuing without the necessity of the execution,

filing and/or recordation of mortgage, security agreements, patent security agreements,

trademarks security agreements, pledge agreements, financing statements or otherwise), valid and

perfected security interests and liens (the "**Liens**") in UMB's pre-petition collateral, and the

13

proceeds thereon now owned or hereinafter acquired or generated by NRMC's Accounts.   The

Liens shall secure payment of all such New Obligations used by NRMC since the Petition Date

and pursuant to the orders on the Motion and any extensions thereof.

21.    The Liens and Super-Priority Claims granted to UMB pursuant to the UMB Loan

Documents and this Order shall be subject only to the Carve-Out.

22.    Without limiting the rights of access and information afforded UMB, the Bond

Trustee, the Development Bank and the Bond Insurer under the respective Loan Documents and

Bond Indebtedness Documents, NRMC shall be required to provide representatives, agents

and/or employees of UMB, the Bond Trustee, the Development Bank and the Bond Insurer

access to NRMC's premises and records in accordance with the respective Loan Documents and

Bond Indebtedness Documents and shall otherwise cooperate, consult with, and provide to such

persons all such non-privileged information and information not subject to a binding

confidentiality agreement as they may reasonably request. NRMC shall also provide to UMB, the

Bond Trustee, the Development Bank and the Bond Insurer, at the time filed or provided, all

statements, schedules or financial reports which NRMC files in the Bankruptcy case, and

information about the ongoing process for sale of NRMC. Without limitation, the information,

documents and consent approval opportunities to be provided to UMB as described in paragraph

9 (e), (f), (g), (h), (i), (k), (l) and (n) above shall also be timely provided to the Bond Trustee, the

Development Bank and the Bond Insurer.

23.    NRMC shall be liable for all New Obligations.

24.    UMB is extending credit and making the loans to NRMC in good faith.

Accordingly, UMB is entitled to the full protection of Bankruptcy Code §364(e) with respect to

14

the New Obligations and the Liens created, adjudicated or authorized by an Order granting the

Motion in the event that any Order granting this Order or any finding, adjudication, or

authorization contained herein is stayed, vacated, reversed or modified on appeal.

25.     Nothing in the Loan Documents, the Bond Indebtedness Documents or this Order

granting the Motion shall be construed as a consent by UMB or the Bond Trustee, the

Development Bank or the Bond Insurer, or an approval by UMB or the Bond Trustee, the

Development Bank or the Bond Insurer of the terms of any asset sale, plan or any amendment or

modification thereto.

26.     NRMC is authorized to perform all acts, and execute and comply with the terms

of such other documents, instruments and agreements in addition to the County Bond, as the

Bond Trustee may reasonably require, as evidence of and for the protection of the County Bond,

or which otherwise may be deemed reasonably necessary by the Bond Trustee to effectuate the

terms and conditions of this Order and the County Bond.

**THEREFORE, IT IS ORDERED** that based upon the record presented to the Court by

NRMC, it appears that NRMC's Motion for a Final Order for (i) Obtaining Credit, (ii) Modifying

Automatic Stay, and (iii) Granting Post-Petition Liens is well taken and should be granted. The

terms and provisions of this Order are hereby approved. NRMC is authorized to borrow funds

from UMB and make payments to UMB, as described in the Motion pursuant to the terms of this

Order. NRMC is also authorized to continue to make its monthly deposits on the Series 2006

Bond to Regions Bank on the 20th day of each month, beginning April 20, 2014, pursuant to the

terms of this Order.

##END OF ORDER##

AGREED AS TO FORM AND CONTENT:


_/s/ Christian B. Waddell_
TIMOTHY A. FORD
CHRISTIAN B. WADDELL
Attorneys for Mississippi
Development Bank

EILEEN N. SHAFFER , MSB #1687
Attorney for Natchez Regional Medical Center
Post Office Box 1177
Jackson, Mississippi   39215-1177
Telephone: (601) 969-3006; Fax: (601) 949-4002
email: enslaw@bellsouth.net


_/s/ Kristina M. Johnson_
KRISTINA M. JOHNSON
CRAIG N. LANDRUM
Attorneys for United Mississippi Bank


_/s/ Robert N. H. Christmas_
ROBERT N. H. CHRISTMAS
Attorney for National Public Finance
Guarantee Corporation


_/s/ Alan L. Smith_
ALAN L. SMITH
Attorney for Regions Bank, As Indenture Trustee
for the Mississippi Development Bank Special
Obligation Bonds, Series 2006 (Adams County,
Mississippi Hospital Revenue Refunding and
Improvement Bond Project)

## 2014 NRMC CASH PROJECTION
### For the week ending May 30, 2014

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Weekly Period Beginning** | 27-Jan | 3-Feb | 10-Feb | 17-Feb | 24-Feb | 3-Mar | 10-Mar | 17-Mar | 24-Mar |
| **Weekly Period Ending** | 31-Jan | 7-Feb | 14-Feb | 21-Feb | 28-Feb | 7-Mar | 14-Mar | 21-Mar | 28-Mar |
| **Year** | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 |
| **Actual Week in Year** | 5 (Actual) | 6 (Actual) | 7 (Actual) | 8 (Actual) | 9 (Actual) | 10 (Actual) | 11 (Actual) | 12 (Actual) | 13 (Actual) |
| **SOURCE OF FUNDS** | | | | | | | | | |
| Beginning Balance | 137,746 | 171,424 | 59,598 | 33,480 | 85,076 | 42,911 | 81,329 | (292,371) | 337,416 |
| Weekly Surplus (Deficit) | 33,678 | (111,825) | (26,119) | 51,596 | (42,165) | 38,418 | (373,700) | 629,787 | 16,617 |
| Ending Balance | 171,424 | 59,598 | 33,480 | 85,076 | 42,911 | 81,329 | (292,371) | 337,416 | 354,034 |
| Payor Payments | 642,918 | 601,194 | 612,989 | 704,109 | 700,370 | 728,389 | 519,811 | 829,936 | 462,353 |
| DSH_UPL Payments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,497,694 |
| Revolver | 24,822 | (496,444) | 44,371 | (370,241) | 227,867 | (287,591) | (44,448) | 0 | (342,608) |
| Maturing of CD | 0 | 0 | 0 | 0 | 0 | 0 | 127,770 | 0 | 0 |
| Total Source of Funds | 667,739 | 104,750 | 657,360 | 333,868 | 928,237 | 440,798 | 603,133 | 829,936 | 1,617,440 |
| **DISBURSEMENT OF FUNDS:** | | | | | | | | | |
| Salaries & Benefits | 459,212 | 91,570 | 454,940 | 0 | 622,628 | 70,355 | 612,951 | 22,365 | 463,214 |
| Supplies | 24,606 | 15,581 | 42,115 | 29,143 | 115,463 | 114,799 | 129,873 | 32,445 | 132,516 |
| Professional Fees | 419 | 45,626 | 69,254 | 25,627 | 11,092 | 88,710 | 40,251 | 0 | 21,422 |
| Contract Services | 57,986 | 8,654 | 34,251 | 4,956 | 55,394 | 2,965 | 44,073 | 14,500 | 4,236 |
| Bankruptcy Expenditures | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 20,164 | 295,466 |
| Payment on Bonds | 0 | 0 | 0 | 100,776 | 0 | 0 | 0 | 100,776 | 0 |
| UPL Tax Assessments | 0 | 0 | 75,000 | 17,256 | 0 | 0 | 0 | 0 | 505,138 |
| Intercompany | 76,554 | 0 | 0 | 104,514 | 97,697 | 125,550 | 75,000 | (12,000) | 79,160 |
| Other A/P | 15,285 | 55,144 | 7,919 | 0 | 68,127 | 0 | 74,684 | 21,899 | 99,670 |
| Total Disbursement of Funds | 634,062 | 216,576 | 683,479 | 282,272 | 970,402 | 402,380 | 976,832 | 200,149 | 1,600,823 |
| TOTAL WEEKLY SURPLUS/(DEFICIT) | 33,678 | (111,825) | (26,119) | 51,596 | (42,165) | 38,418 | (373,700) | 629,787 | 16,617 |
| ENDING BALANCE | 171,424 | 59,598 | 33,480 | 85,076 | 42,911 | 81,329 | (292,371) | 337,416 | 354,034 |
| Line of Credit Balance | 1,954,196 | 1,457,752 | 1,502,123 | 1,131,882 | 1,359,749 | 1,072,158 | 1,027,710 | 1,027,710 | 685,102 |

CF Summary

6/6/2014

1



tabbies®

EXHIBIT

## 2014 NRMC CASH PROJECTION
### For the week ending May 30, 2014

| Weekly Period Beginning | 31-Mar | 7-Apr | 14-Apr | 21-Apr | 28-Apr | 5-May | 12-May | 19-May | 26-May |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Weekly Period Ending | 4-Apr | 11-Apr | 18-Apr | 25-Apr | 2-May | 9-May | 16-May | 23-May | 30-May |
| Year | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 |
| Actual Week in Year | 14 (Actual) | 15 (Actual) | 16 (Actual) | 17 (Actual) | 18 (Actual) | 19 | 20 (Actual) | 21 (Actual) | 22 (Actual) |
| Beginning Balance | 354,034 | 113,070 | 140,644 | 168,259 | 18,667 | 121,600 | 74,319 | 83,800 | 21,533 |
| Weekly Surplus (Deficit) | (240,964) | 27,574 | 27,615 | (149,592) | 102,933 | (47,281) | 9,481 | (62,268) | 110,700 |
| Ending Balance | 113,070 | 140,644 | 168,259 | 18,667 | 121,600 | 74,319 | 83,800 | 21,533 | 132,233 |
| **SOURCE OF FUNDS** | | | | | | | | | |
| Payor Payments | 600,400 | 447,151 | 837,186 | 705,572 | 613,198 | 533,708 | 623,818 | 782,674 | 814,238 |
| DSH, UPL Payments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Revolver | (522,820) | 284,830 | (376,344) | 30,953 | (110,658) | 368,993 | (369,278) | 376,974 | (375,984) |
| Maturing of CD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Source of Funds | 77,580 | 731,981 | 460,843 | 736,524 | 502,540 | 902,701 | 254,540 | 1,159,647 | 438,254 |
| **DISBURSEMENT OF FUNDS** | | | | | | | | | |
| Salaries & Benefits | 52,346 | 468,449 | 233,014 | 478,657 | 73,650 | 477,278 | 14,926 | 698,193 | 1,101 |
| Supplies | 49,892 | 61,168 | 47,666 | 57,502 | 47,609 | 122,543 | 59,155 | 45,645 | 144,413 |
| Professional fees | 47,203 | 39,807 | 26,920 | 9,970 | 165,802 | 106,365 | 19,338 | 39,499 | 94,872 |
| Contract Services | 27,660 | 23,597 | 0 | 52,023 | 10,610 | 47,312 | 12,585 | 38,223 | 13,260 |
| Bankruptcy Expenditures | 0 | 0 | 18,725 | 16,530 | 0 | 0 | 0 | 54,369 | 25,620 |
| Payment on Bonds | 0 | 0 | 10,158 | 100,776 | 0 | 0 | 0 | 100,776 | 0 |
| UPL Tax Assessments | 0 | 0 | 0 | 0 | 0 | 163,210 | 0 | 157,000 | 0 |
| Intercompany | 0 | 80,000 | 0 | 20,000 | 0 | 0 | 0 | 0 | 0 |
| Other A/P | 141,442 | 31,386 | 96,744 | 150,660 | 101,936 | 33,274 | 139,055 | 88,211 | 48,287 |
| Total Disbursement of Funds | 318,543 | 704,407 | 433,227 | 886,117 | 399,607 | 949,981 | 245,059 | 1,221,915 | 327,554 |
| TOTAL WEEKLY SURPLUS/(DEFICIT) | (240,964) | 27,574 | 27,615 | (149,592) | 102,933 | (47,281) | 9,481 | (62,268) | 110,700 |
| ENDING BALANCE | 113,070 | 140,644 | 168,259 | 18,667 | 121,600 | 74,319 | 83,800 | 21,533 | 132,233 |
| Line of Credit Balance | 162,282 | 447,112 | 70,768 | 101,721 | (8,937) | 360,055 | (9,223) | 367,751 | (8,233) |

CF Summary

6/6/2014

2

## 2014 NRMC CASH PROJECTION
### For the week ending May 30, 2014

| | 2-Jun 6-Jun 2014 23 (Proj) | 9-Jun 13-Jun 2014 24 (Proj) | 16-Jun 20-Jun 2014 25 (Proj) | 23-Jun 27-Jun 2014 26 (Proj) | 30-Jun 4-Jul 2014 27 (Proj) | 7-Jul 11-Jul 2014 28 (Proj) | 14-Jul 18-Jul 2014 29 (Proj) | 21-Jul 25-Jul 2014 30 (Proj) | 28-Jul 1-Aug 2014 31 (Proj) |
|---|---|---|---|---|---|---|---|---|---|
| **Weekly Period Beginning** | 2-Jun | 9-Jun | 16-Jun | 23-Jun | 30-Jun | 7-Jul | 14-Jul | 21-Jul | 28-Jul |
| **Weekly Period Ending** | 6-Jun | 13-Jun | 20-Jun | 27-Jun | 4-Jul | 11-Jul | 18-Jul | 25-Jul | 1-Aug |
| **Year** | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 |
| **Actual Week in Year** | 23 (Proj) | 24 (Proj) | 25 (Proj) | 26 (Proj) | 27 (Proj) | 28 (Proj) | 29 (Proj) | 30 (Proj) | 31 (Proj) |
| Beginning Balance | 132,233 | 132,233 | 316,786 | 316,786 | 683,338 | 683,337 | 860,187 | 860,187 | 931,781 |
| Weekly Surplus (Deficit) | 0 | 184,553 | 0 | 366,552 | (0) | 176,850 | (0) | 71,593 | 0 |
| Ending Balance | 132,233 | 316,786 | 316,786 | 683,338 | 683,337 | 860,187 | 860,187 | 931,781 | 931,781 |
| **SOURCE OF FUNDS** | | | | | | | | | |
| Payor Payments | 661,350 | 661,417 | 661,483 | 661,549 | 661,615 | 661,681 | 661,747 | 661,814 | 661,880 |
| DSH, UPL Payments | 0 | 0 | 0 | 733,291 | 0 | 0 | 0 | 0 | 0 |
| Revolver | 172,094 | (163,861) | 318,978 | (318,978) | 171,829 | (171,829) | 217,937 | (217,937) | 171,565 |
| Maturing of CD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Source of Funds** | 833,444 | 497,556 | 980,461 | 1,080,862 | 833,444 | 489,852 | 879,684 | 443,877 | 833,445 |
| **DISBURSEMENT OF FUNDS** | | | | | | | | | |
| Salaries & Benefits | 479,926 | 36,520 | 479,926 | 36,520 | 479,926 | 36,520 | 479,926 | 36,520 | 479,926 |
| Supplies | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 |
| Professional Fees | 0 | 0 | 46,240 | 23,120 | 0 | 0 | 46,240 | 0 | 0 |
| Contract Services | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 |
| Bankruptcy Expenditures | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Payment on Bonds | 0 | 0 | 100,776 | 0 | 0 | 0 | 0 | 100,776 | 0 |
| UPL Tax Assessments | 0 | 0 | 0 | 419,683 | 0 | 0 | 0 | 0 | 0 |
| Intercompany | 77,036 | 0 | 77,036 | 0 | 77,036 | 0 | 77,036 | 0 | 77,036 |
| Other A/P | 142,216 | 142,216 | 142,216 | 100,721 | 142,216 | 142,216 | 142,216 | 100,721 | 142,216 |
| **Total Disbursement of Funds** | 833,444 | 313,002 | 980,460 | 714,310 | 833,444 | 313,002 | 879,684 | 372,283 | 833,444 |
| **TOTAL WEEKLY SURPLUS/(DEFICIT)** | 0 | 184,553 | 0 | 366,552 | (0) | 176,850 | (0) | 71,593 | 0 |
| **ENDING BALANCE** | 132,233 | 316,786 | 316,786 | 683,338 | 683,337 | 860,187 | 860,187 | 931,781 | 931,781 |
| **Line of Credit Balance** | 163,861 | 0 | 318,978 | 0 | 171,829 | 0 | 217,937 | 0 | 171,565 |

CF Summary

6/6/2014

3

## 2014 NRMC CASH PROJECTION
### For the week ending May 30, 2014

| | 4-Aug / 8-Aug | 11-Aug / 15-Aug | 18-Aug / 22-Aug | 25-Aug / 29-Aug | 1-Sep / 5-Sep | 8-Sep / 12-Sep | 15-Sep / 19-Sep | 22-Sep / 26-Sep | 29-Sep / 3-Oct |
|---|---|---|---|---|---|---|---|---|---|
| Weekly Period Beginning / Weekly Period Ending / Year / Actual Week in Year | 2014 / 32 (Proj) | 2014 / 33 (Proj) | 2014 / 34 (Proj) | 2014 / 35 (Proj) | 2014 / 36 (Proj) | 2014 / 37 (Proj) | 2014 / 38 (Proj) | 2014 / 39 (Proj) | 2014 / 40 (Proj) |
| Beginning Balance | 931,781 | 1,109,159 | 1,109,159 | 1,181,282 | 1,181,282 | 1,359,191 | 1,359,190 | 1,431,843 | 1,431,843 |
| Weekly Surplus (Deficit) | 177,378 | (0) | 72,123 | 0 | 177,908 | (0) | 72,653 | (0) | 178,438 |
| Ending Balance | 1,109,159 | 1,109,159 | 1,181,282 | 1,181,282 | 1,359,191 | 1,359,190 | 1,431,843 | 1,431,843 | 1,610,281 |
| **SOURCE OF FUNDS** | | | | | | | | | |
| Payor Payments | 661,946 | 662,012 | 662,078 | 662,145 | 662,211 | 662,277 | 662,343 | 662,409 | 662,476 |
| DSH, UPL Payments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Revolver | (171,565) | 217,672 | (217,672) | 171,300 | (171,300) | 171,167 | (171,167) | 171,035 | (171,035) |
| Maturing of CD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Source of Funds | 490,381 | 879,684 | 444,406 | 833,445 | 490,911 | 833,444 | 491,176 | 833,444 | 491,441 |
| **DISBURSEMENT OF FUNDS** | | | | | | | | | |
| Salaries & Benefits | 36,520 | 479,926 | 36,520 | 479,926 | 36,520 | 479,926 | 36,520 | 479,926 | 36,520 |
| Supplies | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 |
| Professional Fees | 0 | 46,240 | 0 | 0 | 0 | 0 | 46,240 | 0 | 0 |
| Contract Services | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 |
| Bankruptcy Expenditures | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Payment on Bonds | 0 | 0 | 100,776 | 0 | 0 | 0 | 100,776 | 0 | 0 |
| UPL Tax Assessments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Intercompany | 0 | 77,036 | 0 | 77,036 | 0 | 77,036 | 0 | 77,036 | 0 |
| Other A/P | 142,216 | 142,216 | 142,216 | 142,216 | 142,216 | 142,216 | 142,216 | 142,216 | 142,216 |
| Total Disbursement of Funds | 313,002 | 879,684 | 372,283 | 833,444 | 313,002 | 833,444 | 418,523 | 833,444 | 313,002 |
| TOTAL WEEKLY SURPLUS/(DEFICIT) | 177,378 | (0) | 72,123 | 0 | 177,908 | (0) | 72,653 | (0) | 178,438 |
| ENDING BALANCE | 1,109,159 | 1,109,159 | 1,181,282 | 1,181,282 | 1,359,191 | 1,359,190 | 1,431,843 | 1,431,843 | 1,610,281 |
| Line of Credit Balance | 0 | 217,672 | 0 | 171,300 | 0 | 171,167 | 0 | 171,035 | 0 |

CF Summary

6/6/2014

4

## 2014 NRMC CASH PROJECTION
### For the week ending May 30, 2014

| Weekly Period Beginning | 6-Oct | 13-Oct | 20-Oct | 27-Oct | 3-Nov | 10-Nov | 17-Nov | 24-Nov |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Weekly Period Ending | 10-Oct | 17-Oct | 24-Oct | 31-Oct | 7-Nov | 14-Nov | 21-Nov | 28-Nov |
| Year | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 | 2014 |
| Actual Week in Year | 41 (Proj) | 42 (Proj) | 43 (Proj) | 44 (Proj) | 45 (Proj) | 46 (Proj) | 47 (Proj) | 48 (Proj) |
| Beginning Balance | 1,610,281 | 1,610,282 | 1,849,364 | 1,849,364 | 1,849,364 | 1,955,692 | 1,955,692 | 2,163,061 |
| Weekly Surplus (Deficit) | | 239,082 | 0 | 106,328 | 0 | 207,369 | 0 | 106,859 |
| Ending Balance | 1,610,282 | 1,849,364 | 1,849,364 | 1,955,692 | 1,955,692 | 2,163,061 | 2,163,061 | 2,269,920 |
| **SOURCE OF FUNDS** | | | | | | | | |
| Payor Payments | 662,542 | 662,608 | 662,674 | 662,741 | 662,807 | 662,873 | 662,940 | 663,006 |
| DSH-UPL Payments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Revolver | 138,341 | (138,341) | 238,984 | (238,984) | 138,076 | (138,076) | 137,943 | (137,943) |
| Maturing of CD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Source of Funds | 800,883 | 524,267 | 901,658 | 423,757 | 800,883 | 524,797 | 800,883 | 525,063 |
| **DISBURSEMENT OF FUNDS** | | | | | | | | |
| Salaries & Benefits | 479,926 | 36,520 | 479,926 | 37,967 | 479,926 | 37,967 | 479,926 | 37,967 |
| Supplies | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 | 77,713 |
| Professional Fees | 0 | 46,240 | 0 | 0 | 0 | 0 | 0 | 0 |
| Contract Services | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 | 36,554 |
| Bankruptcy Expenditures | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Payment on Bonds | 0 | 0 | 100,776 | 0 | 0 | 0 | 0 | 100,776 |
| UPL Tax Assessments | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Intercompany | 77,036 | 0 | 0 | 77,036 | 77,036 | 77,036 | 77,036 | 77,036 |
| Other A/P | 109,654 | 68,159 | 109,654 | 68,159 | 109,654 | 68,159 | 109,654 | 68,159 |
| Total Disbursement of Funds | 800,883 | 285,185 | 901,658 | 317,428 | 800,883 | 317,428 | 800,883 | 418,204 |
| TOTAL WEEKLY SURPLUS/(DEFICIT) | 0 | 239,082 | 0 | 106,328 | 0 | 207,369 | (0) | 106,859 |
| ENDING BALANCE | 1,610,282 | 1,849,364 | 1,849,364 | 1,955,692 | 1,955,692 | 2,163,061 | 2,163,061 | 2,269,920 |
| Line of Credit Balance | 138,341 | 0 | 238,984 | 0 | 138,076 | 0 | 137,943 | 0 |

CF Summary

6/6/2014

5