## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                    CASE NO.  14-01048-NPO

NATCHEZ REGIONAL MEDICAL CENTER          CHAPTER 9

    DEBTOR


### MOTION OF THE LIQUIDATING TRUSTEE FOR THE
### NATCHEZ REGIONAL MEDICAL CENTER FOR AN ORDER
### AUTHORIZING FINAL DISTRIBUTION AND OTHER RELIEF


The Liquidating Trustee (the "*Trustee*") for the Natchez Regional Medical Center (the "*Debtor*") in the captioned case files this *Motion of the Liquidating Trustee for the Natchez Regional Medical Center for an Order Authorizing Final Distribution and Other Relief* (the "*Motion*") seeking an order from this Court approving the final distribution (the "*Final Distribution*") and other relief, including reserving funds necessary to administer the Final Distribution and seek a dismissal.  In support of the Motion, the Trustee respectfully states as follows:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction to consider this Motion pursuant to (i) 28 U.S.C. §§ 157 and 1334; (iii) 11 U.S.C. §§ 904 and 945; and (iii) the Plan and Confirmation Order (defined below).

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O) and may be determined by the Bankruptcy Court.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

{00372940-3}

3.     The statutory predicates for the relief requested in this Motion are sections 901, 904 and 944 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rule 3021 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

## BACKGROUND AND PROCEDURAL HISTORY

4.     The Natchez Regional Medical Center (the "***Hospital***") was owned by Adams County (the "***County***") a political subdivision of the State of Mississippi, subject to the governing board known as the County Board of Supervisors.

5.     Pursuant to the terms of the *Order (A) Approving Form and Publication of Noticing Required by 11 U.S.C. Section 923; and (B) Establishing a Deadline for Objections to Eligibility* (the "***Publication Order***") [Dkt. # 113], the Hospital was deemed eligible to be a debtor (the "***Chapter 9 Case***").

6.     Appointed in this proceeding was the official committee of unsecured creditors pursuant to Sections 901 and 1102(a) of the Bankruptcy Code (the "***Committee***").

7.     The *Second Amended Plan for the Adjustment of Debts of Natchez Regional Medical Center* (the "***Plan***") [Dkt. # 405] as confirmed by the *Findings of Fact, Conclusions of Law, and Order Confirming the Chapter 9 Plan of Adjustment for Natchez Regional Medical Center* ("***Confirmation Orde***r") [Dkt. # 481], provides the Trustee with certain rights, powers and obligations to implement and effectuate the terms of the Plan.  See Plan, VII.C.  The Trustee was empowered to liquidate all remaining assets of the Natchez Regional Medical Center (the "***Hospital***") after the sale of the Hospital.

8.     In summary, the Plan provided for the sale of the Hospital, free and clear of all liens, claims and encumbrances, to a buyer determined at an auction.  See Plan Article V.B. Further, the Plan included an exit loan which was a certain loan obtained by the Hospital from

{00372940-3}

Regions Bank as the exit lender in the amount of $3,000,000.00, with the funds provided on the effective date to facilitate the closing of the sale of the Hospital and satisfy certain Plan payments (the "***Exit Loan***"). See Plan Article V.C.  The terms of the Exit Loan were detailed in the *Term Sheet for Natchez Regional Medical Center Loan (Secured by Limited Tax Pledge of Adams County, MS)* which is attached to the Plan.

9.      Pursuant to the terms of the Plan, claims included non-classified claims and classified claims.  The Trustee has performed his duties under the terms of the Plan and he has paid the holders of allowed non-classified claims consisting of administrative claims, cure payments and section 503(b)(9) claims.  See Plan Article III.

10.     Further, the Trustee has performed his duties under the terms of the Plan and he has paid the holders of allowed:  (i) Class 1- Secured Claims of Indenture Trustee for the Bondholders and the Development Bank; (ii) Class 2 – Secured Claim of United Mississippi Bank; and (iii) Class 3- General Unsecured Allowed Convenience Claims.

11.     The Trustee anticipates making the Final Distribution to the Class 4 – General Unsecured Claims and Class 5 – Tort Claims and Employment Claims for which there is no General Liability Insurance Coverage or if there is no EPLI Coverage (collectively, the "***General Unsecured Claimants***"").

12.     Further, at the time of filing the Motion, the Trustee has made the request and is awaiting the return of a payroll overpayment to the IRS.  The estimated amount of the overpayment is $81,736.82.  The Trustee, depending on the timing of the receipt of the funds with either include the funds in the Final Distribution, or if the amount is received and it is cumbersome to distribute, such funds will be used to satisfy any outstanding costs of administration of the Final Distribution with any remaining funds paid to the County.

3

{00372940-3}

## FINAL DISTRIBUTION TO GENERAL UNSECURED CLAIMANTS

13.     Pursuant to the terms of the Plan, after all of the Hospital's assets and property have been liquidated, no disputed claims exist and all post-effective date expenses have been paid, the Trustee shall make a Final Distribution.  See Plan Article VI.K.3.  As discussed infra, the Trustee has made all post-effective date expenses under the terms of the Plan, except those expenses and professional fees that will be incurred in making the Final Distribution to the General Unsecured Claimants and administrative expenses necessary to seek from this Court an order the Chapter 9 Case under section 945(b) of the Bankruptcy Code.

## STATEMENT OF FUNDS AVAILABLE FOR FINAL DISTRIBUTION

14.     Pursuant to the terms of the Plan, the Hospital, the County and the Committee reached an agreement regarding the repayment of the Exit Loan.  See Plan Article V.D. Delineated on **Exhibit A** is the calculation of the Trustee pursuant to Plan Article V.D and after the collection of the retained accounts receivable, satisfaction and payment in full of all allowed administrative claims, all allowed claims of Classes 1, 2 and 3.  As indicated on Exhibit A, the Trustee owes the County $775,000.00 and the Trustee has $2,275,000.00[1] to make a final pro rata distribution to the holders of allowed Class 4 claims, and fund the dismissal of the Chapter 9 Case.

## FINAL DISTRIBUTION AND NOTICE TO GENERAL UNSECURED CLAIMANTS

15.     Pursuant to the terms of the Plan, after all of the Hospital's assets and property have been liquidated, no disputed claims exist and all post-effective date expenses have been paid, the Trustee shall make the Final Distribution.  See Plan Article VI.K.3.

---

[1] As indicated on Exhibit A the amount available for Class 4 includes:  $1,000,000.00 + $500,000.00 + $775,000.00 = $2,275,000.00.

{00372940-3}

16.     As discussed, the Trustee has made all post-effective date expenses under the terms of the Plan, except those expenses and professional fees that will be incurred in making the Final Distribution and seeking the closing of the Chapter 9 Case under section 945(b) of the Bankruptcy Code.   Under this Motion, the Trustee is seeking the authority to reserve funds necessary to complete the Final Distribution and close the Chapter 9 Case.

17.     Attached hereto as **Exhibit B** is the Trustee's analysis of the allowed Class 4 claims and holders of allowed Class 5 claims that are considered General Unsecured Claimants. The Trustee created this chart after reviewing the Hospital's schedules, the proofs of claim filed in the Chapter 9 Case, and orders entered from resolution of filed objections against certain identified proofs of claim.  This chart also includes holders of Allowed Class 5 claimants that, under the terms of the Plan, will participate in the Final Distribution.

18.     The Trustee will calculate the Final Distribution for the General Unsecured Claimants as identified on attached **Exhibit B** and based upon the amount listed as the allowed claim.

19.     Pursuant to the terms of the Plan, the Trustee is to provide notice to all creditors whose claims that are not to be paid in full.  See Plan Article VII. N.  Accordingly, this Motion is notice to the General Unsecured Claimants as listed on **Exhibit B** as claimants whose claims that will not be paid in full in this Chapter 9 Case as required by the Plan.

## FINAL DISTRIBUTION PROCEDURE

20.     The terms of the Plan address the process of distributing funds to the General Unsecured Claimants. See Article VII.  The final distribution will be mailed to either the address listed on the proof of claim, the address listed in the schedule or pursuant to any change of address notice received by the Trustee.  The Trustee will make a final distribution promptly

5

following the final, non-appealable entry of the order approving this Motion and the distribution date will be the date of the check.

21.     The Trustee recognizes that a portion of the distribution checks may be returned as undeliverable, remain as unclaimed or will not be negotiated at a financial institution.  The Trustee will make a reasonable effort to reach claimants issued unclaimed checks.  However, the Trustee is seeking the authority from this Court, that if after the 60th day after the initial issue date, and the Trustee is unsuccessful in reaching the claimant, the funds will either be subject to re-distribution under the terms of this Motion, or if it is burdensome to administer the unclaimed funds, the funds will be paid to the County.

## DISMISSING THE CHAPTER 9 CASE

22.     Pursuant to the terms of the Plan, the Trustee's duties and responsibilities continue until all property of the Hospital has been converted to cash and all costs, distributions, expenses and obligations incurred in the administering those assets.  Plan Article VII.N.

23.     Further, pursuant to the terms of the Plan and Section 923 of the Bankruptcy Code, after the Final Distribution is completed, the Trustee will seek dismissal of the Chapter 9 Case.  Dismissal will include notification in at least one newspaper of general circulation and other notice to through general circulation among bond dealers.  The Trustee anticipates, after the completion of the Final Distribution, having to publish notice of the dismissal in the *The Natchez Democrat, The Clarion Ledger, The Bond Buyer*, electronically on the Municipal Securities Rulemaking Board's Electronic Municipal Market Access, to the creditors' matrix, the Chancery Clerk of Adams County, State of Mississippi and the Attorney General for the State of Mississippi.  Therefore, the Trustee anticipates reserving the amount of $10,000.00 to fund the dismissal of the Chapter 9 Case.

6

## **RELIEF REQUESTED**

24.     Consistent with the terms of the Plan and the Confirmation Order, by this Motion, the Trustee is seeking an order:

a.      Authorizing the Trustee to make a final distribution based upon the creditors and amounts listed on Exhibit B promptly following the final, non-appealable entry of the order approving this Motion and recognizing that the creditors and amounts on Exhibit B are final;

b.      Authorizing the Trustee to retain approximately $10,000.00 from the funds available to pay the General Unsecured Claimants as listed on Exhibit B a reasonable sum to fund administrative costs of processing, printing and mailing the checks for the Final Distribution;

c.      Authorizing the Trustee to retain from the funds available to pay the General Unsecured Claimants as listed on Exhibit B a reasonable sum to compensate the Trustee in the amount of $50,000.00, compensate, to compensate Gillum and Associates in the amount of $20,000.00 and to compensate the Trustee's attorneys for winding down the Chapter 9 Case and processing unclaimed funds in the amount of $40,000.00;

d.      Authorizing the Trustee to retain from the funds available to pay the General Unsecured Claimants as listed on Exhibit B a reasonable sum to fund the administrative costs to dismiss the Chapter 9 Case including seeking court approval and notice requirements in the estimated amount of $20,000;

e.      Authorizing that if after the 60th day after the initial issue date, and the Trustee is unsuccessful in reaching the claimant, the funds will either be subject to re-distribution

7

under the terms of this Motion, or if it is burdensome to administer the unclaimed funds, the funds will be paid to the County.; and

f.      Recognizing that notice of this Motion satisfies the notice requirement in the Plan as listed in Article VII.N.

25.     Considering the foregoing, the Trustee seeks an order from this Court granting the relief requested and authorizing the Trustee to make the Final Distribution to the General Unsecured Claimants as in compliance with the terms of the Plan.  The Trustee has implemented the terms and provisions of the Plan and has the obligation to pay allowed claims, and therefore the authority to make the Final Distribution.

26.     Under the terms of the Plan, the Trustee has the power to establish a reserve for the payment of future expenses.  See Plan Article VII.L.16.  According, the Trustee is seeking an order from this Court authorizing the Trustee to reserve the funds necessary to administer the Final Distribution, compensate professionals, and to seek a dismissal of the Chapter 9 Case.

**WHEREFORE**, the Trustee seeks an order from this Court, substantially, in the form attached hereto as **Exhibit C** and for all other relief that is just and equitable.

*/s/Greta M. Brouphy*
Greta M. Brouphy (La. Bar No. 26216)
Heller, Draper, Patrick, Horn & Manthey, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
Tel:  (504) 299-3333/Fax: (504) 299-3399
E-mail:  gbrouphy@hellerdraper.com

Counsel for The Chapter 9 Trustee

{00372940-3}